**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **MARGIE DELL GRAHAM,** § | |
| § | |
| **Plaintiff** § | |
| § | |
| v. § | Civil Action No. 3:08-CV-2133-N (BH) |
| § | |
| **COMMISSIONER OF SOCIAL** § | |
| **SECURITY ADMINISTRATION,** § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment and Brief in Support*, filed June 29, 2009; *Defendant's Motion for Summary Judgment and Memorandum in Support*, filed July 28, 2009; and *Plaintiff's Reply Brief*, filed August 03, 2009. Based on the evidence and applicable law, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED,** *Defendant's Motion for Summary Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

**I. BACKGROUND**[1]

**A.   Procedural History**

Margie Dell Graham ("Plaintiff") seeks judicial review of a final decision by the

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

- 1 -

Commissioner of Social Security ("Commissioner") denying her claim for benefits under Title II of the Social Security Act. On September 12, 2005, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. (Tr. at 28, 94-96). Plaintiff claimed she had been disabled since June 18, 2004, due to muscle damage in both legs, high blood pressure, plantar warts on both feet, and spurs on the spine. (Tr. at 94, 136-37). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 37-38). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 56-57). A hearing, at which Plaintiff personally appeared and testified, was held on May 14, 2007. (Tr. at 426-59). On November 29, 2007, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 28-36). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 21-23). The ALJ's decision became the final decision of the Commissioner. (Tr. at 21). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on December 03, 2008.

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born in 1946. (Tr. at 94). At the time of the hearing before the ALJ, she was 62 years old and had obtained a certificate of General Educational Development. (Tr. at 429). Her past relevant work experience included work as a Hairstylist. *Id.* Plaintiff last worked in 2004. (Tr. at 430).

    **2.     Medical Evidence**

Plaintiff has a history of aching discomfort in her legs beginning in January of 2003. (Tr. at 173). On January 07, 2003, during a neurological consultation with Plaintiff, Dr. Jack D. Gardner,

M.D., reported that Plaintiff probably had lumbar radioulitis. *Id.*  An MRI of Plaintiff's lumbar spine conducted on January 20, 2003 revealed mild desiccation of some of her spinal discs with no bulging, no herniation, and no encroachment on the spinal canal or the foramina. (Tr. at 158).

On October 23, 2003, during a visit by Plaintiff to DeHaro-Saldivar Health Center ("the Center") to establish her health care, Dr. Maria Robinson, M.D., noted that Plaintiff had reflux, depression and allergies, and that her status was post-menopausal. (Tr. at 236). On April 30, 2004, Plaintiff returned to the Center, this time complaining of dysuria and frequency. (Tr. at 232). Dr. Robinson noted cystitis, reflux, hyperlipidemia, and hypertension. *Id.*

On May 11, 2004, Plaintiff visited the Emergency Department at Parkland Hospital complaining of knee pain. (Tr. at 286). A diagnosis of moderate sized joint effusion with minimal degenerative changes was made, and Plaintiff was treated and discharged. (Tr. at 284, 286).

On September 1, 2004, Plaintiff returned to the Center complaining of lower back pain and dysuria. (Tr. at 226). The Center noted dysuria, lower back pain, and Plaintiff's post-menopausal status as its impressions. *Id.* The following month, on October 13, 2004, Plaintiff visited the Center again, this time complaining of dry throat and difficulties swallowing a large bolus of food. (Tr. at 224). The Center noted that Plaintiff had dry throat, leg cramps, and anxiety. *Id.* Plaintiff was instructed to stop smoking. *Id.*

On October 26, 2004, Plaintiff visited the Ear-Nose-Throat Clinic at Parkland hospital and reported that she felt like she had a knot in her throat, that her throat was half-closed, and that her medications got lodged in her throat. (Tr. at 278). The Clinic assessed it to be dysphagia and scheduled a barium swallow. *Id.* The barium swallow, conducted on November 8, 2004, showed "some mass effect upon the posterior wall of the cervical esophagus related to anterior projecting

cervical spine osteophytes." (Tr. at 276).

On December 14, 2004, Plaintiff appeared at the Emergency Department at Parkland Hospital complaining of throat pain. (Tr. at 258-59). She reported worsening of her dysphagia and an inability to swallow solids. (Tr. at 259). An MRI conducted the next day showed a slight deviation of the trachea to the left consistent with Plaintiff's prior thyroid surgery and residual fibrous scar and "moderate to severe degenerative changes of the cervical vertebral body, especially at the level of C4-4 and C5-6 with degenerative disc changes and disc narrowing." (Tr. at 257). She was diagnosed with dysphagia. (Tr. at 259).

On February 14, 2005, Plaintiff returned to the Center for a follow-up. (Tr. at 218). Her blood pressure was noted to be 120/70, and an x-ray of the chest showed mild to moderate chronic obstructive pulmonary disease. (Tr. at 217-18). The following month, on March 5, 2005, Plaintiff revisited the Center complaining of left ear ache, burning sensation during urination, and lower back pain. (Tr. at 215). A diagnosis of urinary tract infection and eustachian dysfunction was made. *Id.*

On March 28, 2005, an MRI of the cervical spine conducted at Parkland hospital showed cervical spondylosis most prominent at C4-5 and C5-6 with borderline central canal diameter at these levels and minimal bilateral neuroforaminal narrowing at C5-6, anterior and posterior osteophytes present at C4-5 and C5-6, and an incidental Tarlov cyst (enlarged nerve root sheath) of the T1 nerve root. (Tr. at 212-13).

On October 4, 2005, an esophagogastroduodenoscopy was performed on Plaintiff and she was diagnosed with dysphagia. (Tr. at 183). On October 18, 2005, an audiometric evaluation revealed severe to profound bilateral high frequency sensori-neural hearing loss. (Tr. at 182).

**3.     Hearing Testimony**

A hearing was held before the ALJ on May 14, 2007. (Tr. at 426). Plaintiff appeared personally and was represented by an attorney. *Id.*

*a.     Plaintiff's Testimony*

Plaintiff testified that she was married, had two adult kids, and had worked as a hairstylist over the past 15 years. (Tr. at 429, 443). As a hairstylist, she cut, permed and washed hair, and sometimes answered the phone and worked the register. (Tr. at 430). She testified that on her alleged disability date, she switched from working full-time to part-time due to her inability to stand for more than thirty minutes. (Tr. at 431, 434). Her legs would swell up and ache "like a constant tooth ache" because she had to continuously pump the chair while shampooing or dressing hair. (Tr. at 435). To relieve the pressure and pain in her legs, she took breaks from work to elevate her legs. *Id.* She also took medicine to alleviate her pain. *Id.* Plaintiff testified that compared to her previous experience of working on twenty clients a day, she could only work on two to three customers a day and that it took her six to seven hours to work on these customers while taking breaks to elevate her legs. (Tr. at 436-37). When questioned about the cause of her leg problems, Plaintiff claimed that she had muscle damage in both her legs because of taking Pravachol, a medicine for cholesterol. (Tr. at 438-39).

Under examination by her attorney concerning other conditions restricting her ability to work as a hairdresser, Plaintiff testified that she had spurs on her spine. (Tr. at 440). As a result, if she bent her neck in a downward position for too long, she was unable to breathe or turn her neck from side to side. *Id.* She performed some neck exercises and took medicine to help with the condition. (Tr. at 441). Plaintiff also testified that she had trouble swallowing pills of more than a certain size

without crushing them. (Tr. at 442). As a consequence, she was unable to take some medications helpful for her neck pain. (Tr. at 442-43). She further stated that she felt some anxiety in dealing with her medical conditions, but that her anxiety did not affect her ability to work. (Tr. at 441-42).

Concerning her household activities, Plaintiff testified that she had become comparatively less active in the two months preceding the hearing because of a recent knee problem. (Tr. at 444-45). She did not do much housework and her husband helped her around the house. (Tr. at 443). Plaintiff stated that throughout the rest of her alleged disability period, she cooked, washed dishes, and did the laundry, while her husband only helped with folding the laundry. (Tr. at 446). Plaintiff further testified that she went to the grocery store once a week and rode a cart during thirty percent of her visits to the grocery store. *Id.* When examined about her hobbies, Plaintiff testified that she was not able to exercise, run on the treadmill, or go to a fitness club as she used to, but she did go to church on Sundays. (Tr. at 447).

### b. *Medical Expert Testimony*

A medical expert ("ME") testified at the hearing that Plaintiff had the following medically determinable illnesses: degenerative disease of the cervical spine, spondylosis with osteophyte formation, degenerative disease of the lumbar spine, a hearing impairment not requiring a hearing aid, and a history of chronic obstructive pulmonary disease based on old granulomitus disease and/or smoking. (Tr. at 450). The ME qualified his diagnosis of a chronic obstructive pulmonary disease as not based on any pulmonary function studies or hospitalizations related to lung disease, but based on an x-ray showing the disease and on Plaintiff's history of smoking. (Tr. at 449-50). Concerning Plaintiff's complaints about muscle disease and muscle wasting as a result of taking Pravachol, the ME opined that Plaintiff's leg pain was a fairly common reaction to Pravachol and that the reaction

subsided once she was taken off of pravachol. (Tr. at 450). The ME also stated that her nerve conduction studies were normal, and that there was no muscle weakness, no gait disturbance, and a full range of motion in her legs. *Id.* Upon cross-examination by Plaintiff's attorney, the ME agreed with the possibility that Plaintiff was wrongly attributing her leg problems to muscle wasting when they could simply be a result of her degenerative disc disease. (Tr. at 453).

Upon examination by the ALJ concerning Plaintiff's physical limitations, the ME opined that Plaintiff could perform work in the light range with 6 hours sitting and 6 hours standing, and could carry 10 pounds frequently and 20 pounds occasionally. (Tr. at 451). She could occasionally climb stairs, balance, crouch, kneel, and crawl. (Tr. at 451-52). However, she could not climb any ropes, ladders or scaffolds, and could not be in a significantly noisy environment. (Tr. at 451). Additionally, because of her suspected lung disease, she could not be in an area containing fumes and odors. *Id.*

### c. *Vocational Expert Testimony*

A vocational expert ("VE") also testified at Plaintiff's hearing. The VE classified Plaintiff's work as a cosmetologist as light with an SVP 6 (DOT #332.271-010). (Tr. at 456).

The ALJ asked the VE to assume a hypothetical person who could lift 20 pounds occasionally and 10 pounds frequently; could stand and walk for 6 hours in an 8-hour work day; could sit for 6 hours in an 8-hour work day; could not climb ladders, ropes or scaffolds; could occasionally climb ramps or stairs, balance, stoop, crouch, or kneel; could not work in a noisy environment, or in atmospheres containing irritating dusts, mists, fumes and odors. (Tr. at 456-57). Based on this residual functional capacity ("RFC"), the VE testified that such a person would be able to perform Plaintiff's past relevant work as a cosmetologist. (Tr. at 457). The VE explained that

the Dictionary of Occupational Titles ("DOT") does not consider odors from "permanence and different styling materials to be in the hazardous fumes range" and that the DOT "normally equate[s] hazardous fumes with more industrial smelting, iron smelting, oil refinery type arenas." *Id.* The VE also explained that the noise intensity level would not be an issue for Plaintiff if she worked as a cosmetologist. *Id.*

The ALJ then adjusted the hypothetical so that Plaintiff could be on her feet for only 4 hours during an 8 hour work-day. *Id.* The VE testified that the hypothetical person would not be able to perform her past relevant work as a cosmetologist full-time. *Id.* The VE opined that an average cosmetologist in the regional and national economy does not work only 4 hours on her feet and 4 hours off her feet. (Tr. at 458).

**C.     ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on November 29, 2007. (Tr. at 28-36). The ALJ found that Plaintiff met the insured status requirements of the Social Security Act on June 18, 2004 and that she had not engaged in substantial gainful activity since that date. (Tr. at 35, ¶¶ 1- 3). In addition, he found that Plaintiff had the severe impairments of cervical and lumbar spine disease, chronic obstructive pulmonary disease, and bilateral hearing loss. (Tr. at 35-36, ¶¶ 4, 5). However, the ALJ concluded that Plaintiff's impairments did not meet or equal a listed impairment as of that date. (Tr. at 36, ¶6). The ALJ also found that Plaintiff's testimony generally was not credible and was given little weight. (Tr. at 36, ¶7).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently; to stand and/or walk for a total of 6 hours in an 8-hour workday; to sit for a total of about 6 hours in an 8-hour workday; and to occasionally

climb ramps or stairs, balance, stoop, crouch or kneel. (Tr. at 36, ¶8). Plaintiff could not crawl, or climb ladders, ropes or scaffolds, and could not work in noise or in atmospheres containing irritating concentrations of dusts, fumes, odors, gases, or chemicals. *Id.* The ALJ noted that Plaintiff retained the RFC to perform less than the light range of work. *Id.* He further noted that Plaintiff's past relevant work as a cosmetologist was light and semi-skilled, and that Plaintiff retained the RFC to perform this work. (Tr. at 36, ¶¶9-11). Since Plaintiff could perform her past relevant work, the ALJ concluded that she was not under a disability. (Tr. at 36, ¶12).

## II.  ANALYSIS

**A.     Legal Standards**

**1.     Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a

> finding of "not disabled" must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.    Issues for Review**

Plaintiff presents the following issues for review:

(1) The ALJ erred as matter of law in finding Plaintiff could return to her past relevant work as a cosmetologist because he found her RFC precluded the ability to tolerate fumes, odors, and chemicals; and

(2) The ALJ erred as a matter of law in failing to comply with SSR 00-4p.

(Pl. Br. at 8, 11). Because the second issue is dispositive, the Court considers it first.

**C.    Issue Two: SSR-004p**

Plaintiff asserts that the ALJ erred as a matter of law in failing to comply with SSR 00-4p.

(Pl. Br. at 11). Plaintiff specifically argues that if the ALJ based his decision on a VE opinion that conflicted with the DOT, it was incumbent on him to explain why he relied upon such conflicting VE opinion. *Id.* Plaintiff relies on *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000) in support for her argument. (Pl. Br. at 12).

In determining whether a claimant can perform her past relevant work, the Commissioner may use the services of a VE and other resources, such as the DOT. 20 C.F.R. § 404.1560(b)(2). When a conflict between the VE's testimony and the DOT exists, courts are split as to whether VE testimony can provide substantial evidence to support the ALJ's decision.[2] The Fifth Circuit has adopted a middle ground approach under which the ALJ's discretion to choose between conflicting evidence is not unfettered. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000); *Gaspard v. Comm'r of Soc. Sec. Admin.*, 609 F.Supp.2d 607, 613 (E.D. Tex. 2009). Under this approach, when a "direct and obvious conflict" exists between VE testimony and the DOT, and the ALJ fails to explain or resolve the conflict, the VE's testimony is "so lessened that reversal and remand for lack of substantial evidence usually follows." *Id.* A direct and obvious conflict exists when the VE's "characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT." *Carey*, 230 F.3d at 146. The middle ground approach also warrants remand for a lack of substantial evidence when VE testimony creates a less obvious conflict or discrepancy between the ALJ's determination of Plaintiff's RFC and the DOT job descriptions, and the ALJ fails to explain or resolve the discrepancy. *Carey*, 230 F.3d at 146; *Gaspard*, 609 F.Supp.2d at 613.

---

[2] Some courts rely on VE testimony even if it conflicts with the DOT. *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999); *Conn v. Sec'y of Health and Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995). By Contrast, the Eighth Circuit has held that the DOT job descriptions are generally more reliable than the conflicting testimony of a VE. *Smith v. Shalala*, 46 F.3D 45, 47 (8th Cir. 1995).

To the extent that there is an implied or indirect conflict between the VE's testimony and the DOT, the ALJ may rely upon VE testimony provided that the record reflects an adequate basis for doing so. *See id*; *see also Haas v. Barnhart*, 2004 WL 396982, *5 (5th Cir. Mar. 4, 2004). The Commissioner's policy does not differentiate between obvious and implicit conflicts but simply requires the ALJ to inquire about any possible conflict between VE evidence and the DOT, and to elicit a reasonable explanation for any apparent and unresolved conflict before relying on VE evidence. SSR 00-4p, 2000 WL 1898704, *1-2 (S.S.A., Dec. 4, 2000); *Gaspard*, 609 F.Supp.2d at 613.

In this case, the ALJ found that Plaintiff's past work had been as a cosmetologist. (Tr. at 36, ¶9). A cosmetologist, as defined by the DOT, requires a person to work in atmospheric conditions frequently, i.e., from 1/3 to 2/3 of the time. DOT #332.271-010, *available at* 1991 WL 672806. The Selected Characteristics of Occupations ("SCO") in the DOT defines atmospheric conditions as "exposure to fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes, or the skin." Dept. of Labor, Dictionary of Occupational Titles, Appendix D (4th ed. 1991). The ALJ determined that Plaintiff's RFC precluded the ability to work in atmospheres containing irritating concentrations of dusts, fumes, odors, gases, or chemicals. (Tr. at 36, ¶8). He further found that Plaintiff's RFC allowed her to return to her past relevant work as a cosmetologist. (Tr. at 36, ¶11). In making this finding, the ALJ relied on VE testimony concerning Plaintiff's ability to perform work as a cosmetologist as defined in the DOT. (Tr. at 35).

The VE testified at the hearing that the DOT does not consider odors from "permanence and different styling materials to be in the hazardous fumes range" and that the DOT "normally equate[s] hazardous fumes with more industrial smelting, iron smelting, oil refinery type arenas." (Tr. at 457).

However, the DOT specifically defines the job of a cosmetologist to require frequent exposure to fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes, or the skin.  The VE's testimony created, at the very least, a less obvious conflict or discrepancy between the ALJ's determination of Plaintiff's RFC and the DOT job description of a cosmetologist.  *Carey*, 230 F.3d at 146.  Since the ALJ failed to explain or resolve this conflict or discrepancy, remand should follow for a lack of substantial evidence to support the ALJ's Step 4 determination.  *Greenspan*, 38 F.3d at 236; *Gaspard*, 609 F.Supp.2d at 613.

Defendant raises three arguments that the ALJ did not err at step 4. (Def. Br. at 6-7).  He first contends that Plaintiff waived her right to challenge VE testimony on appeal when she failed to cross-examine the VE at the hearing.  (Def. Br. at 6). SSR 00-4p requires that prior to relying upon evidence from a VE to support a determination of disability, the ALJ must identify and obtain a reasonable explanation for any apparent conflicts between occupational evidence provided by the DOT or its companion publication, the SCO. SSR 00-4p, 2000 WL 1898704, *1-2.  As part of his duty to fully develop the record at the hearing level, the ALJ must inquire on the record whether or not there is such an inconsistency.  *Id.* at *4.  Furthermore, the ALJ must explain in the decision how any identified conflict was resolved.  *Id.* at *4.  Since the burden is on the ALJ to fully develop the record prior to determining disability, the claimant is not required to raise the issue of any discrepancy at the hearing.  *Romine v. Barnhart*, 454 F.Supp.2d 623, 627-28 (E.D. Tex. 2006) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 735-36 (7th Cir. 2006)).  Thus, the responsibility lies with the ALJ, and not the Plaintiff, to ask about any possible conflicts between the VE's testimony and the DOT.

Defendant next contends that under *Carey*, Plaintiff cannot scan the record for implied or

unexplained conflicts between VE testimony and the voluminous provisions of the DOT and then present the conflict as reversible error. (Def. Br. at 7). In that case, the court was referring to inferred or implied conflicts. *Id.* at 146-147. *Carey* did not involve a "direct and obvious conflict," nor did it involve a "less obvious conflict or discrepancy." *Id.* at 145-47. In contrast, this case involves, at the very least, a "less obvious conflict or discrepancy" between the ALJ's determination of Plaintiff's RFC and the DOT job descriptions.

Defendant's final argument is that the VE fully resolved the precise, alleged conflict between her testimony and the DOT when she explained that the type of irritants that Plaintiff was unable to work around were not the same as those that the DOT contemplates for the job of cosmetologist. (Def. Br. at 7). This argument is also addressed by *Carey*, where the Fifth Circuit found that any potential inferred conflict between the DOT and VE testimony was "greatly mitigated" by the VE's specific testimony. *Carey*, 230 F.3d at 146. As discussed earlier, this case does not involve any potential inferred conflict but, at the very least, a less obvious conflict or discrepancy between the ALJ's chosen language and the DOT job description. Additionally, in contrast to Carey, the VE's testimony in this case created, instead of "greatly mitigating," the conflict or discrepancy, and confounded it even more by equating the atmospheric conditions that cosmetologists are required to work in with conditions in an industrial setting. (*See* Tr. at 457).

For the reasons discussed above, the Court finds a lack of substantial evidence to support the ALJ's step 4 finding that Plaintiff can return to her previous work as a cosmetologist. *Leggett*, 67 F.3d at 564. Since remand is required on this issue, the Court does not consider Plaintiff's first issue for review.

### III. RECOMMENDATION

Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, *Defendant's Motion for Summary Judgment* should be **DENIED**, the decision of the Commissioner should be **REVERSED,** and the case should be **REMANDED** for reconsideration.

**SO RECOMMENDED** on this 27th day of August, 2009.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE